For those identifications, you can be seated. And are you ready to proceed, Counsel? Oh, sorry. We must call the case. Thank you very much. Madam, if you would. 1846 consolidated with 12-19-17, J.D. Calvin v. City of Chicago. Counsel, proceed. Good morning, Your Honors. Good morning. Good morning, sir. May it please the Court, this case is about the public's right to know how the City of Chicago and the Chicago Police Department address complaints of police misconduct. Mr. Calvin is seeking two types of records, complaint register files, or CRs, which detail the investigations into citizen complaints, and repeater lists, which are lists of the officers who received the most misconduct complaints in the city. I will be addressing the issues surrounding the CRs, and my co-counsel, Ms. Patty, will discuss the repeater lists. The trial court committed three errors when it denied Mr. Calvin access to the CRs. First, it retroactively applied amendments to FOIA that came into effect after Mr. Calvin's claim accrued. Second, it disregarded this Court's unambiguous precedent that investigations into complaints of misconduct bear on officers' public duties and, therefore, are not exempt under the personal privacy exemption of the 2009 version of FOIA. Counsel, are you going to be arguing at all about what act applies in 2009, 2010? Yes, Your Honor. You are? Okay, continue then, please. Thank you. The third error was that it held that CRs were exempt from disclosure under the adjudicatory exemption of the 2010 version of FOIA. So I'll first address the retroactivity issue. Can I ask you a broad question? Yes. Why so much focus on what act applies? Are they really that different? The law was clear in 2009 when Mr. Calvin made his request, and that's the reason that the defendants had no legal basis for withholding the documents when they did so. This Court had held in Gekas v. Williamson that CRs must be disclosed under 2009 FOIA. So when the Circuit Court applied the amendments to FOIA, it did so contrary to the clear legislative intent. Well, as far as the statute itself, though, it's been changed since 2010, is it not? Yes. And it could be changed tomorrow again. That's right. Or it could be even taken away. I mean, who knows what the legislature would do. So when we make our ruling, what's the law that we apply? The law at the time of filing or the time when relief is granted? When Mr. Calvin exhausted his administrative remedies and his claim accrued. That all occurred in 2009. This case was even filed in 2009. And the amendments to FOIA didn't go into effect until January 1, 2010. I understand that, Counsel. But, again, this is injunctive relief. And isn't there a little bit of uniqueness as far as declaratory or injunctive relief as to when, you know, what law applies when the Court makes the ruling as to the case? So the defendants have argued that because FOIA liability operates prospectively, that therefore the Court must apply the law at the time that the decision is rendered. They argue that this is prospective injunctive relief being sought here. But just because it's injunctive relief doesn't mean it's prospective relief. They've argued that the fact that it must be granted in the future means it's prospective. But that's true of all relief, even damages awards in a tort case or a contract case. The question is not whether it will be granted in the future, but whether the remedy addresses a wrong that occurred in the past or an ongoing wrong that has to be remedied through ongoing action. So nothing unique about the fact that it's injunctive relief? No, Your Honor. Mr. Collin, you know, we live in a changing society. And one of the points the city makes seems to be, and I don't want to put words in their mouth, but it seems to be these records were getting released, you had these federal judges doing this, and the legislature specifically intended this change to stop them from being released. And doesn't the legislature have the right to say we made a mistake, we didn't mean for this kind of thing to go out, and therefore we're going to fine-tune and refine the statute? The legislature can apply. And if so, did they actually do that by changing concerning to relating? That change was simply done for housekeeping purposes to make the language in the statute consistent. Legislatures can apply laws retroactively, assuming they indicate that intent and there's no constitutional bar against doing so. Here, however, they indicated an intent for prospective application. That's because they used a delayed implementation date. And at the time that they did so, the Illinois Supreme Court had held on multiple occasions that a delayed implementation date is a clear indication of an intent for prospective application. And even beyond that, the statute on statute sets out a default rule. That rule is that substantive amendments to laws apply prospectively by default, and procedural amendments apply retroactively. And no one disagrees, these amendments are substantive, the amendments to the exemptions of FOIA. When the defendants argue that there's no vested right in a FOIA claim, they're arguing under the second prong of the U.S. Supreme Court's test in a case called Landgraf. The Illinois Supreme Court has adopted that test, but it's counseled that there's never any need for courts in Illinois to reach the second step of that test. The first step is legislative intent. And it's always clear, either on the face of the statute itself, or in the amendments, or I'm sorry, in the statute on statutes default rule. They've also argued that because there's a provision in 2010 FOIA's attorney's fees language that specifies that that provision applies prospectively, that this means that the rest of the statute applies retroactively. But there's a much better reason that the legislature included that language, and that's because attorney's fees provisions are usually considered procedural by default, and therefore they would apply retroactively under the statute on statutes. So the legislature used explicit language to override that default rule. And that argument is exactly what the U.S. Supreme Court rejected in the Landgraf case. It noted that this argument required the court to, quote, assume that Congress chose a surprisingly indirect route to convey an important and easily expressed message concerning the act's effect on pending cases. Counsel, do we have any legislative history of the change in the attorney's fees section that has to do with the prospective application? We don't have any legislative history on that. So we're not sure why the legislature did that. That's correct. But Illinois courts have held that attorney's fees provisions often apply retroactively by default. So the legislature could have specified that the law applied retroactively, but it said the exact opposite by using a delayed implementation date. The bottom line is that applying the 2010 version of FOIA would reward the defendants for refusing to produce the records at the time that clear, unambiguous precedent from this court required them to do so. Just to quickly address the 2009 version of FOIA substantively, this court has repeatedly held that CRs must be produced under that version of FOIA. In Gekas v. Williamson, this court noted that because complaints of misconduct bear on officers' public duties, they're not exempted by the personal privacy exemption of the 2009 version of FOIA. And this very division of this court confirmed that in 2012 in the Watkins v. McArthur case. And the court also made clear that... Mr. Connell, is there any principal distinction that you can see, and I'm asking you to argue the other side, between Watkins and this case? They both involve CRs. There's certainly no distinction on whether the personal privacy exemption applies. To police misconduct complaints. That's right. And the court has made clear that even when complaints are unsustained, these are not exempt, because the way that the city addresses or fails to address these complaints is itself public information. The court noted that citizens might want to see whether complaints determined to be unsustained really are unsustained, and that people can't perform their duties contemplated by FOIA without access to these records. Counsel, let's get to the 7-1-N versus the 7-1-U, which was the old number. This is the new number. And is that covered by Watkins? Adjudicative? No. No, Your Honor. So what about things that are in the CR reports that seem to be adjudicative, like recommended findings of OPS or IAD or the other organization that came after OPS? Isn't that getting very close to adjudicative? Well, there is an adjudicative process, but it's completely separate from the investigative process that CRs represent. But don't they make recommendations oftentimes when they complete their investigation? So when a complaint is made, an investigation is done by either Internal Affairs or IPRA, the Independent Police Review Authority. They make a factual investigation and then a factual finding as to whether a complaint is sustained or unsustained. And then at that point, the superintendent decides what discipline to impose. But there's no recommendations of any kind in any of those documents? There are preliminary recommendations to the superintendent. But adjudications are only triggered when a suspension of 30 days or more is imposed by the superintendent or when an officer challenges their suspension. So is your position, let's say we have just Joe Citizen off the street, writes a nasty letter to the superintendent of police saying, this officer did this and the other things improperly or beat me up or did some other horrible things. Without any thought about disciplinary action, but just venting. And that's not relating to an adjudication, is it? No. So then it would be releasable under your position? Yes. Okay. Now let me take that one more step. Trying to discern the public policy interest behind disclosing things on the one hand and not disclosing things on the other hand, doesn't that run the risk of putting people maybe in some kind of retaliatory danger if the officer, who can file a FOIA request just like anybody else, gets all these nasty letters that people write about him or her and then can retaliate against those people for reporting them to the chief when they thought it was going to be anonymous? Your Honor, certainly the names of complaining witnesses could be redacted under FOIA's personal privacy exemption. Actually, you got to a question I haven't gotten to yet, so let me jump in with it. Do you concede that if we rule in your favor on basically everything, that we're still going to have to ask the judge below to review these things in camera, to take out things like social security numbers, home phone numbers, all the things? When I practiced local government law for 20 years, I had my black marker and I was inking out of FOIA responses. So the police, the department that produces these records under FOIA can redact them. Okay. And if that's challenged, then it might have to go to an in-camera review. But they do redact them. Are you willing to trust the department to do the redactions? I mean, we're willing to go through the normal FOIA process. And the city produces and redacts CRs in federal civil rights litigation all the time. Okay. So this is something they know how to do and that they do. Mr. Cohen, you didn't quite answer the question. I'm interested in knowing whether you think an in-camera, if we rule in your favor, will an in-camera inspection at some point be necessary? What do you think? It certainly wouldn't be necessary to determine whether the records fall into Exemption 7-1N because none of the CRs relate. That's the adjudicatory exemption. Because none of the CRs relate to an adjudication within the narrow reading that FOIA requires. It's possible that an in-camera review could be conducted with regard to certain personal privacy information, if that's challenged. Counsel, let me ask you. In this case, I think the request was for many more CR reports for other police officers initially, and then it got down to five. Is that right? That's right. They've been identified, and we know the volume of those documents, correct? Well, the defendants have produced inconsistent estimates of the number of the documents. They first said it was around 400 and then later around 200. 400 has been the high number we're talking about because they argue that it's too voluminous. That's where we are, though. That's a big difference. All right. Counsel, want to continue and wrap up here? Sure. So the adjudicatory exemption exempts records relating to a public body's adjudication of employee grievances or disciplinary cases. The defendants have attempted to give an unduly broad reading to the term relating to, arguing that records of investigations must relate to adjudications, even in the vast majority of cases in which no adjudication occurs. This ignores the fundamental line between investigations and adjudications that's been recognized by the General Assembly, by the Illinois Attorney General's Office of the Public Access Counselor, and by a number of federal district courts that have reviewed this issue. It also ignores the mandate to read exemptions to FOIA narrowly as exceptions to the general right of the public to government records. As Justice Scalia has noted, the term relating to has no fixed meaning independent of its context because anything can potentially relate to anything else. And there is a clear line between investigations and adjudications. The General Assembly itself recognized this line when it rejected a proposed amendment to 7-1-N that would have added the word investigations to the exemption. There would have been no reason to propose or reject this amendment if 7-1-N already covered investigations. What's the history of that, counsel? There was a bill proposed that would have added, I believe it was the words records relating to a public body's investigation or adjudication. But it was proposed but voted down. Yes. So Case Law tells us we cannot consider that as a legislative intent. So we have to focus on something different. Okay. Well, so first of all, the clear line between the investigatory and the adjudicatory parts of the process is one piece of evidence. These are done by different agencies, and the vast majority of investigations are conducted without ever leading to an adjudication of any kind. So I just want to talk about what might be included in 7-1-N, what does relate to an adjudication. So after the superintendent files a charging document that triggers an adjudication, anything that comes after that relates to an adjudication. That includes the charging document itself, transcript of the hearing, any motions before the police board or deliberations of the police board. And the city doesn't really disagree with you on that, do they? I don't believe so. Okay. But the investigations are an entirely separate part, as the public access counselor and a number of federal courts have noted. Furthermore, the public access counselor recognized this line in a binding opinion, and as the official charged with interpreting and giving binding rulings to FOIA disputes under the 2010 version of FOIA, that interpretation of the law is entitled to some deference. Is it precedential? I believe so. I mean, I don't believe it's binding on this court, but certainly it should be entitled. It's interesting. Beyond that, a binding decision, if appealed in the courts, would be entitled to deference under the Administrative Review Act. All right. Finish up, Counsel. Sure. Moreover, to our knowledge, none of the CRs at issue in this case ever led to an adjudication of any kind. So it's even further removed to say that CRs that were never used in any adjudication whatsoever relate to adjudications. So in response to this lack of an intent to exempt CRs in the 2010 amendments, the defendants point to a short exchange between Speaker Madigan and Representative Black, in which Madigan states that the records that led up to a firing could be exempt. But there's nothing about police in this exchange. There's nothing about overruling the Gekas case, which happened shortly before these amendments were passed. And again, the General Assembly knows the difference between investigations and adjudications. We would hope. And I'd just like to make one last point, if that's okay. Yes, Counsel. The argument that CRs must be exempt because they relate to an adjudicatory process makes less sense here because the entire adjudicative process in Chicago is already public. Under Chicago ordinance, every aspect of the police board adjudications is public. The public can attend these hearings. The recordings are public. The decisions are posted publicly on the web. The decisions contain the name of the officer, the reasons for the opinion, a summary of the evidence. The defendant's sole basis for arguing that CRs are exempt under 7-1-N is that they somehow relate to this adjudication. But this reasoning falls apart when the adjudicated process itself is public under the law. We respectfully request that this Court reverse the Circuit Court's decision on the CRs and order the defendants to produce them. Mr. Calvin. Counsel Thayer, thank you very much for your presentation. Do you want to respond in part to the CR part or wait until the end? Or how do you want to do it? I defer to you, Counsel. Defer to you. Pardon me? Defer to you. Yeah, whatever you want to do. I'll respond. I'll reserve time at the end to respond to the rest. Although, I mean, the list is our appeal. The issue of the list is actually our appeal, though. Oh, that's right. I can address both now, too. You can do the CR and then go right into the non-informal CR. That would be fine with me, and I'll reserve five minutes for rebuttal. So you're at the end, then. Okay. All right. So may it please the Court, Justin Hooper for the defendants. The Circuit Court properly held that Section 719 of the amended FOIA exempts CRs from disclosure, but it erred when it nonetheless awarded the disclosure of the list which summarized information from the CRs. To begin with, the Circuit Court properly applied Section 719 of the amended FOIA to Calvin's request for CRs, and it did so because the application of the amended FOIA was not retroactive. And even if it were retroactive, it was in accord with the plain language of the amended statute. Mr. Hooper, can you respond to a comment just made by your opposing counsel regarding the fact that the entire adjudicative process is public anyway, so your argument is hair-spritting without any real relevance to whether or not the material that you're seeking to withhold can be withheld. I mean, he's basically saying it's all open anyway. Can you respond to that? I find that interesting. Sure, Your Honor. First, as a first point, this is an entirely new argument. This is the first I'm hearing of it, so I'm not entirely up to speed on all of the aspects of it. But my response to it would be that regardless of whether the adjudication itself is open to the public, that doesn't change what the General Assembly has said in the statute. The General Assembly has made clear that under FOIA, the documents that relate to the adjudication are not obtainable under FOIA. So regardless of whether the process itself is open to the public, that doesn't change what the General Assembly has said, what the General Assembly's intent was in crafting that provision of FOIA. Can you tell me what your definition of relating to means? I mean, Mr. Cohen explained it as he saw it. What do you think that means? Within the context of this specific provision? Within the context of these documents, this lawsuit. Sure. Within the context of this particular provision and this lawsuit, I think it's important to keep in mind that the police board who adjudicates these issues could never actually adjudicate anything if the process wasn't started at IPRA and IED. IPRA and IED are actually the first steps in this process. They're the ones who initiate the investigation. They're the ones who talk to everyone and find out and make a recommendation as to whether or not there is something sustainable there. And it's based on that investigation and recommendation that any adjudication that occurs goes forward. And for that reason, at a minimum, those documents and records are related to the adjudication process at the police board. For that reason, they should be exempt under Section 711. Let's give you, for the sake of argument, the point that concerning and relating are manifestly different words with different meanings. But here, the law you're relying on, the new law was signed August of 2009. It wasn't effective until January 10. So there's a five-month gap there. Couldn't someone have made a request during that time and it would have had to have been honored? And the only reason we're here, I mean, we're here five years later. I mean, this has been percolating through the courts forever and ever. But I've got a problem when the law vested a right in this reporter for these records and the city did not respond within the normal FOIA time, but instead decided to take a different route and now it's been litigated for five years. Isn't he still entitled to it under the law that was in effect when he made the request? Well, I'd like to respond to that in three parts, if I may. First, the city, and we make this clear in our brief, we're not actually relying on the change in the language from concerning to relating to. I believe that what Mr. Cowler's attempt to do is to argue that there was some 30-year history of applying that concerning language in a way that is inconsistent with what we're arguing under the amended FOIA, but that's not the case. As Mr. Cowler conceded just now, Watkins and the other cases didn't actually address 7-1-U and that concerning to language. But going back to the vested rights idea or the rights that Mr. Calvin had, first of all, CPD actually did respond. They asked for a seven-day extension, which they're allowed under the statute. They gave a response and said, your initial request, which asked for thousands, not five, but thousands of CRs is overly burdensome. Please tailor this back. Then Mr. Calvin filed an appeal to the superintendent of CPD, as he's allowed to do under the statute, and when the superintendent requested an extension of a week to work on that, Mr. Calvin announced unilaterally, we're done. I believe that I can go to court now. And he filed suit on November 19, 2009, at the 11th hour just before the statute changed. So I think that that's an important understanding of the history of this litigation. It's not that CPD dragged this out and dragged this into court for five years. This is how it happened. The bond decision came down. Well, regardless of fault, regardless of who went what route, I mean, the question still remains, didn't that law vest a right in the reporter for the documents? And that's why I believe that it is important here that what we're dealing with is a form of prospective relief that acts in the future. It's not relief that is intended to remedy some past harm that was done to Mr. Calvin. It's relief that the court will give him in the future on his request for documents. Nothing has happened until he actually got to court, and that's the reason why, consistent with the Landgraf approach to retroactivity, that the new statute should apply here. How do you distinguish Attorney General Opinion 13-11 involving the Bloomington Police Department? We know it does not control us. Right. It's interesting. It's authoritative. I mean, I believe me. Right. I understand the Attorney General is not always right. Right. But let's say, for the sake of argument, it's there. How do you distinguish it? And was it ever subject to further review? Downstate, do we know? I'm not aware of any further review or history of it. But my understanding, I could be wrong on that, but my understanding is that no court at this point, reviewing court, has addressed this issue, whether coming out of the Attorney General context or whether it's coming out. We have a slew of federal courts, though, don't we? The federal district courts have, and the federal district courts have divided. I mean, there's no clear precedent, and some of the federal district courts have relied on that non-binding decision from the Attorney Generals, and others have said, no, we think this is wrong. And here we say that this is not a correct interpretation of what the Attorney General has done. And when the Attorney General has acted in a way that is not consistent with the intent of the General Assembly, the General Assembly's intent in the plain language of the statute trumps the Attorney General. And that's why review, ultimate review, is best in this court and not with the Attorney General in such a case. Counsel, let me ask you a basic question. The burden is on the city to show that the Section 7 exemptions apply. Is that right? That's correct, Your Honor. What's the burden that you have, the burden of proof there? And I believe it's clear and convincing. Do you agree? You know, Your Honor, I must apologize, but I'm not sure. I know we do have the burden, and I believe we've met that burden here, but by showing how these documents do relate to this. But it does make a difference. I mean, if it's preponderance or clear and convincing. I mean, clear and convincing is a much higher standard. Obviously, yes. So it's your burden to prove to us by the appropriate standard that the exemptions apply. That's true, yes. All right. And I asked Mr. Cohen sort of the hypothetical about the angry citizen who just sends letters. All right. And those may be important. They may be probative. They may be interesting to the public. Okay? They may have nothing to do with an adjudication. Does the city contend before us today that those kinds of communications are exempt under this provision of FOIA? Well, I believe that often those types of communications that come in, whether it be a phone call or a letter to IAD or IPRA, actually do trigger a CR. And if that's the case, then they would be. Or let's say it goes to the watch commander. To the watch commander. Or somebody outside who's not really intricately part of that how do we fire the cop process. Because the citizens don't necessarily understand the complicated structure of the Chicago Police Department's personnel practices. Right. They just complain. And this, I mean, not to go outside the record, but my understanding from having looked at a number of CRs in the past is that most of these CRs are generated by some complaint that comes in in one form or another. They get routed and say, okay, if you want to complain about the cop, here's a form. Right. Or you need to talk to, please call this person, give a report, whatever it is. Should that not happen, I can't see why we would take the position that a document that comes in and doesn't begin what we say is the first step in the adjudicative process would necessarily relate to the adjudication of police disciplinary matters. Here, clearly what we're dealing with, what's at issue here, which are CR matters, which were put through the formal process of the CR investigation, that that is a different case from that hypothetical. I think one of the points of the whole lawsuit, you know, this whole thing, let's put the flashlight and shed it on the secrets of government, is that there are a lot of complaints about particular officers that are not going to adjudication and are getting swept under the rug. That's, I think, the point of the FOIA request here. Well, it's true that there are many complaints that come in and do not go to adjudication. And rightfully so, perhaps. We can't presume, I mean, there's no presumption that there's something wrong with that process. But the issue is really, did the General Assembly intend, regardless whether there's something wrong with that process, for those documents to be made public? And here, clearly, where the General Assembly has said that documents that relate to the adjudication process are exempt and they should not be until the General Assembly changes its mind and changes the laws, and they should remain exempt regardless of what the public interest is. And I think that the Illinois Supreme Court has made that clear in Lieber and in Stern, saying that when you have a per se exemption that's been drafted by the General Assembly, that trumps any public interest in those documents, and that's what controls how the courts handle it. Let's go through the exemptions that you claim apply. First of all, the exemption under the personnel file. What's the effect that Watkins has on that? Well, the personnel file exemption would only apply if this Court chooses to apply the pre-amendment FOIA. It doesn't exist anymore under the 2009 FOIA in the form that it did before. So under the 2009 FOIA, we would respectfully ask that this Court depart from Watkins and Gikas because, as we've explained in our briefs, Watkins and Gikas, respectfully, seem to have misread what Stern said about the public duties exception to the privacy exemption in former Section 7.1b. Well, didn't the courts in Gikas and Watson hear those same arguments and rule otherwise? The courts certainly addressed Stern. I don't know if they heard the argument that you are misreading Stern and what you're doing, but they certainly heard the argument that Lieber and Stern say that Section 7.1b.2 is a per se exception and therefore these documents should be per se exempt. That's the case. But at a minimum, we would ask that if this Court chooses to apply the prior version of the FOIA, that it allow us the opportunity to redact the documents and allow for in-camera review of whatever should be redacted under Watkins, including the 7.1f deliberative process exemption and anything that, as Gikas recognized, if there are documents that don't relate to the public duties, such as complaints about off-duty conduct of the officers, that we should be allowed to exempt those records as well. All right. Counsel, I asked your opponent about recommended findings that are contained in CRs from OPS or IPRA or IAD. Are there such things? Yes, absolutely, Your Honor. There is a summary report that comes out of these investigations in almost all cases in which the investigator makes a final recommendation as to whether the allegations are unfounded, not sustained, exonerated, or sustained. And based on that recommendation, it goes up the review channel, the command review channel, for a determination by someone who says, okay, there should be or there should not be further proceedings with this CR. But those recommendations, those preliminary recommendations from IPRA or OPS or IAD or wherever it may be, are certainly contained within the CR funds. Anne. I want to – a moment ago you talked about perhaps redacting out or withdrawing from disclosure things relating to off-duty conduct. But isn't it perfectly possible, and doesn't it happen, that Chicago police officers are disciplined for things that they do off-duty, such as criminal acts? Certainly, Your Honor. So then why would we exempt those from the disclosure? If somebody said, hey, this particular officer, while he was off-duty in Ohio, committed X crime? Well, Your Honor, the rules of conduct that subject an officer to discipline actually do cover off-duty conduct as well. But I don't know that that necessarily means that just because the duty rules require an officer to behave in a certain way off-duty, that those off-duty actions necessarily, for purposes of FOIA, imply there was something connected to their public duties. But it still generated a record kept by the police department, didn't it? That is correct, Your Honor. Oftentimes, though, it's because someone has made a complaint to the police department about that off-duty activity, and therefore the police department investigates it because it does have a duty to make sure that its officers are adhering to both the law and to the rules of conduct. But again, that would be why if we, in the first instance, decide that there is something that, in our mock judgment, does not relate to public duties, that if we redact that or say that it's exempt, that in-camera review would then be necessary in order to allow for a neutral determination of whether or not that was a proper judgment on our part. Counselor, did you say in response to my earlier question that the 09 should apply? No, I said that the personal privacy and public duties exemption would only apply under the 2009 because that section of the statute, as it existed at the time, has been significantly changed, and we are not suggesting that that portion of the statute would apply under the 2010 ruling. And that's why, if 2010 applies, why the results should be different from Watkins and Geek is because Section 7.1.N should apply as it stands now under Section 7.1.N. And as some of the district courts have recognized, Section 7.1.N does not require us showing that the documents at issue do not relate to public duties. They are just per se exempt under the current FOIAs. Counselor, do you want to finish up? Certainly. If I might just quickly touch on the list then, or would you like for me to wait until the other side? Oh, yeah, your cross appeal. Is anybody going to talk about attorney's fees, or is that off the table? I just want to answer questions. Okay, because I have some questions about it. And I can answer questions as well, but that's an issue to raise. Any objections to counsel going into the list issue then? I will try to be brief on this, and I'll focus on the current FOIA. No hurry. We're fine. So the circuit court here erred by ordering disclosure of the list, and that is because the list merely summarized information from the CR files that are themselves exempt under the current version of FOIA. Counsel, not having seen what's in the more in the bond list, is it a summary? Can you generally tell us what's in those things? Certainly. The more list, for example, and this is what was told to the circuit court as well below, they include every complaint with the officers who were identified as falling into the request and the time period. It includes every complaint, the officer's name, and each complaint for that officer during the time period, the category of the complaint, so what type of complaint it was, the preliminary finding that was issued by the investigator, and any discipline that ultimately resulted. That's what's summarized for each of these officers on the more list. And the bond list is similar to that as well. It's a similar summary. And the bond list, for example, has more than 600 officers' names on it and every CR that they received during the time period. So the information in the list are clearly nothing more than the summaries of what's in the CRs without the actual substance of the CRs themselves. But how are these relevant to what this litigation involves as far as the five Chicago police officers that we're concerned about here? Well, I think it's a separate issue. The five Chicago police officers that have been narrowed down were the five officers who were named as defendants in bonds, my understanding, or at least whose conduct was issued in the bond litigation. Whereas these lists were generated in the bond and more litigation pursuant to discovery requests in those litigations asking for, you know, all the officers who received X number of complaints within X years. And the trial court ruled on this on the issue of waiver, did they not? That is correct, Your Honor. And that was because you didn't bring up this issue until your reply? Well, that's how the trial court read our summary judgment brief. But respectfully, we believe that was error because the way the brief was set up was the first section was Section 71N of the FOIA, or the list and the CRs are exempt.  And in that, there was a discussion of CRs because all of the case law that had been generated in the district courts up to that time involved CRs. Following that, there were separate sections specifically pertaining to the list. But just because there were separate sections pertaining to the list does not mean that the first section that addressed both the CRs and the list didn't address both. It was just that there were later arguments that pertained specifically to the list, and that's how the trial court viewed it. The trial judge didn't issue a ruling on the list as far as the Section 71N or some of the other arguments we made under that more general discussion. Is there a difference between waiver and forfeiture? There is a difference between waiver and forfeiture, Your Honor. My understanding of waiver is that it's an intentional abandonment of a claim, whereas forfeiture is the failure to make a claim in the first instance. I think there's some distinction as to whether waiver or forfeiture applies in a civil context or whether one is limited to criminal, I think, forfeiture, but that's sort of a separate discussion. I think lots of courts use waiver and forfeiture interchangeably. And they shouldn't, by the way. That's true, Your Honor. So in essence, disclosure of the list, but not the CRs, is inconsistent both with the language of the statute and also with logic, and it allows a backdoor to obtaining information about exempt CRs that are otherwise exempt under the FOIA. And that's another reason that these lists should be exempt, is that these lists are really not records as defined by FOIA. They're not records for purposes of FOIA, because these were lists that were – these aren't records that were kept in the traditional sense by CPD. Although Mr. Calvin alleges that CPD just simply went to the computer and pulled these lists out, that's not what happened. CPD actually had to go in and have someone work through the database and put together these lists in a way that answered the information requested in the discovery. But I think we can all agree that FOIA does not require a government official to create a new document. That's true. Okay. But wasn't the document already created as the result of the federal litigation and therefore then existed in the files of the governmental body, thus making it subject to FOIA? I'm not – I don't understand where the city is going here with that line of argument. Well, that's true, Your Honor, but I think there's also evidence in the record from the sergeants who were involved in creating these lists, that these are not lists that are normally maintained by CPD, and indeed one of the sergeants put in her affidavit, Sergeant, moved that out. Since when does normally fall into the FOIA? Where is that in FOIA? Okay. What happened is she said that we normally, as a policy matter, don't retain these lists either, but what happened was that in the bond litigation Mr. Calvin sought to intervene, and at that point he wanted the lists, and so they were held on to, at least for that purpose. And then immediately after it ended, Mr. Calvin sent FOIA requests asking for the lists from the bond moral litigation. The moral litigation was still ongoing at the time, and so at that point we had a duty to maintain them and preserve them. And, in fact, Mr. Calvin obtained an order in the circuit court saying that we had to preserve them and could not destroy them. So to the extent the FOIA was under the Local Records Act, right? Did the city ever, let me explain this part so you understand what I'm asking. If the record exists in the city's files, okay, regardless of the reason why, as long as it's not like an ad for the chop suey restaurant next door to City Hall,  but if it relates to the functions of the government, you cannot dispose of it without going through the Local Records Commission. That's true, Your Honor. All right? Right. And did the city ever apply to the Local Records Commission to have this destroyed because it was obsolete of some sort, or did Judge Cohen's order intervene, or was it preserved because it was involved in litigation? There's nothing in the record that indicates anything like that, Your Honor. So you have the records, and I'm still trying to figure out if you have the records, regardless of why they were created, they existed at the time that the request was made. So you're kind of losing me as to why they're not subject to FOIA. Well, I think that if you look at what this Court said in Blue Star Energy, which was a case in which the Court said these documents don't really fit within any of the exemptions, they're not traditional trade secrets, but we're going to go ahead and exempt them because we're concerned for the fact that these were compelled to be given to the government, they're only in the possession of the government because they were compelled, and pursuant to a confidentiality agreement. Why is this Court's case similar? You're losing me there, too. I don't think that case is similar to this at all. But if you think it is, you tell me why. Well, Your Honor, I think that it's similar because there's a – the concern running throughout that case when you look at it is the concern that those documents – there was only a right to get those documents under FOIA because they had been produced to the government agency pursuant to a confidentiality agreement, and essentially litigation. And the Court didn't want to allow parties to essentially get at those documents that had been compelled to be produced under a confidentiality agreement, so therefore – But those involve trade secrets. I mean, what trade secrets are involved with citizens who are complaining that they're being beaten up by police officers? I mean, trade secrets in a corporate setting is somewhat different, I would say, than what's at stake in the context of this case. Well, it's true that the Court applied the trade secret exemption, but the Court actually said these are not trade secrets in their traditional sense. But it is confidential information that was given to a government entity about these businesses pursuant to, essentially, regulatory litigation. For that reason, they shouldn't be available to the Court. And how is that confidential information similar to the confidential information in this case that the city is fighting so hard to keep from disclosing? Well, like in Blue Star, the only reason that the plaintiff there had a claim to get that information was because it had been produced pursuant to a confidentiality agreement. Here, there would be no claim to this information if the city had not been required to comply with discovery requests pursuant to similar confidentiality orders in the litigation. That's my point. We're going round and round in circles because the city had to respond. They were ordered to produce this material, so somebody actually did the work and culled the information from whatever database it was found in, and now the information exists in hard form. That's the point. So why is it not disclosable under FOIA? That's where you're losing me. Even if it's not outside the definition of a public record under FOIA, the fact is it's still summaries of CRs which are themselves exempt. It would still be exempt under Section 7.1n and the other applicable provisions. Counsel, let me ask you if it is disclosable under FOIA, but what's the point of any government agency attempting to get a protective order? It's all going to come out under FOIA anyway. That would be our point. I think that is the same type of concern that I think runs through Blue Star, is that type of how do you have confidential proceedings involved in the government if everything is FOIA-able. Well, use outside counsel. That's how you get around it. But then you have the issue of whether an agent who has materials in possession of the government is still held to the agent's possession of those, which is a different, more complicated issue, but it's certainly still an issue. All right, counsel, thank you. You're welcome. Before we wrap up, do you have any questions about the attorney fee? Do you mind if we ask him first? No, I don't. Counsel, what's the standard of review here on the attorney fees? You tell me. It's abuse of discretion, Your Honor. I think Ulrich and the few cases that address the former statute I think make that clear. And I think the statute itself makes that clear, because the statute says that the circuit court may grant fees where a plaintiff has substantially prevailed. It's discretionary. Even where there's been a substantial victory by the plaintiff, it's still discretionary. But doesn't abuse of discretion apply when the court has ruled on a fee petition and either denied it or granted it? That's when the abuse of discretion comes in, when we see a ruling from the court? Because this court ruled that the words substantially prevail weren't complied with, and it seems more like statutory construction, doesn't it? Well, that seems more like statutory construction, but I would still say that the choice whether or not to award fees, period, based on what Mr. Calvin won was discretionary to the court. I mean, the court had the discretion. Even if the court was wrong about Mr. Calvin having substantially prevailed, say that's the case, the statute says even where that's the case, that he substantially prevailed, the court still may award fees. It was still an act of discretion. And the court looked at what Mr. Calvin had asked for in the first instance and his limited success in obtaining only the list and said, no, I don't think you deserve fees here. And that is not an unreasonable exercise of discretion. Thank you, counsel. Any further? No. Thank you very much. And Ms. Paddy? May it please the court? Yes. The circuit court correctly ruled that the defendant... Your name again, counsel. My name is Florence Italia Paddy. My last name is P-A-T-T-I. Thank you. You're welcome. The circuit court correctly ruled that defendants must provide Mr. Calvin with the repeater list, lists of Chicago police officers charged with the most abuse in the city. This ruling was correct for four reasons. First, the documents are plainly public records. Second, no FOIA exemption applies to these documents. Third, the circuit court did not abuse its discretion in holding the defendants waive their argument that exemption 7-1-N applies to the lists. And fourth, on the merits, exemption 7-1-N does not exempt the lists from disclosure. Counsel, you've got to address that waiver argument for me. Be more specific about it, please. How could the court possibly rule waiver? What's the basis for that? The defendants first raised the argument that exemption 7-1-N applies to the lists on a motion to reconsider, not in their summary judgment pleadings. In their summary judgment pleadings, they made five arguments about the CRs and three separate arguments about the repeater lists. None of those arguments about the repeater list was the argument that exemption 7-1-N applies. So it wasn't in a reply brief. It was in a motion to reconsider. That's correct. It was in a motion to reconsider. In the initial summary judgment motion, they did not raise it. In plaintiff's response, we catalogued defendants' arguments. And in the reply, they not only did not raise the issue, but did not dispute our interpretation of what arguments they were making as the lists. They first raised this issue in their motion to reconsider after the court had already rejected their other unavailing arguments about the repeater lists. Any opinion about forfeiture versus waiver? I believe that Your Honor is correct that forfeiture is, that waiver is the affirmative act of waiving a right and forfeiture is not raising it. And therefore, however, I believe that the circuit court used the waiver language in its ruling, which I think is why the parties have continued to use that language. Thank you. Ms. Patty, there's a theme that's been floating around the world of FOIA for a long time to the effect that a governmental body should not be able to assert an exemption at later stages of the review process that it did not assert originally. I don't think that that ever actually made it into the FOIA that we have today. Is that correct? I believe that's correct, Your Honor. There's that specific language that says they're forever barred from coming up with better reasons if the first person didn't come up with the really good ones. Is that essentially correct? I believe that's essentially correct. However, I would note that the 2010 version of FOIA does require public bodies to release information as expediently as possible, which implies that they should not be able to get a second bite at the apple. If they don't initially raise an exemption, they can't then come in on a motion to reconsider and continue to delay the release of documents. Is there any case law in that? No, but it's in the 2010 version of the statute. As far as I know, there's no case law interpreting that provision. Sort of a rolling disclosure, in other words. Or a rolling attempt to shield documents from disclosure, trying out an exemption, seeing if it sticks, and then learning that it does not and raising a motion to reconsider or raising a new argument on an appeal. I mean, that would invite delay. I want to address the issue that you were discussing earlier about whether or not these documents are public records. I would note that the FOIA definition of public records is very broad. It includes, and I'm quoting from the statute, all records having been prepared by or for, or having been, or being used by, received by, in the possession of, or under the control of any public body.  and they control these documents. There's no requirement that these documents be prepared or possessed in the ordinary course of business. And there's no exception for documents produced pursuant to a protective order. In fact, the Seventh Circuit noted that the protective order does not interfere with Mr. Calvin's ability to try to obtain the documents he seeks directly from the city under the Illinois FOIA. It continued, nothing in the protective order here prohibits the city from disclosing any of its police department records to the public upon request. Counsel, is there any reason to consider why the lists were prepared as a result of discovery? For example, if a petitioner or plaintiff in the federal court asks for a list of all the top five recidivists or top five CR complaint receivers in the Chicago Police Department, and the city says, we don't have that document. The court says, you've got to produce it. The city didn't want to produce that. They were forced to produce that document. Do we take any of that into consideration? No, for a few reasons, Your Honor. First, that language does not exist in FOIA. FOIA makes no requirement that a document be produced for a particular reason and no exception for documents that were produced only because of a court order or pursuant to a protective order. So, I mean, this court is bound by the language of the statute. There have been other cases where courts have expressed perhaps concern but noted that it's not the court's role to invent new exemptions to FOIA. I think most recently this division in the Fagle versus Department of Transportation case noted that it's not the role of the court to exempt an exception. Secondly, Your Honor, all of the information that is contained in these repeater lists is maintained by the city and, in fact, is maintained in the ordinary course of its business. FOIA treats electronic records the same as paper records. But your specific answer to the question that Justice Connors asked, it doesn't, I gather, tell me if I'm wrong, it doesn't matter how or why the document or the records were produced. Once they are produced and they exist, they have to disclose them. Isn't that what your position is? That's absolutely correct, Your Honor. That's absolutely correct. However, it is also the case that they possess and control all of this underlying information in the ordinary course of business. Asking for a list of certain officers is the exact same as asking for that list if it were maintained in paper. A database doesn't organize any information in any particular way. And in order to require, as FOIA does, that electronic records be disclosed to the same extent as paper records, public bodies have to retrieve data from a repeater list. That process involves writing a query and drawing out that data from the database. That's identical to saying to somebody, please go gather these documents from your file cabinet. The query functionally works as someone who would go and get the documents from the file cabinet. But I would note that, yes, absolutely, Your Honor. Our primary argument is that it does not matter why these lists were produced. In fact, that's why we requested them by beat stamp number as produced in civil litigation, because it's very easy for the department to simply go and get documents that they've already produced in federal cases. So for governmental entities to ask for a protective order in any case is a wasted effort, would you agree? Why not just put it all on the Internet the day the discovery comes out? Well, there could be documents that are pursuant to both a protective order and a FOIA exemption. So, you know, one reason to request a protective order might be that it is, in fact, otherwise private information. But the protective order doesn't make any determination about whether the document would need to be produced under FOIA. In this case, again, the Seventh Circuit was clear that the protective order has no bearing. But, again, there might be cases where both a protective order and a FOIA exemption are appropriate. There is no FOIA exemption that applies to these documents. And FOIA is clear that only documents falling within an enumerated exemption are exempt. I want to return to the discussion of Blue Star. Defendants noted that the court says that the documents at issue don't fall within the traditional understanding of trade secrets. And it's true that the opinion contains that language. However, the court also says that they clearly fall within the FOIA trade secrets exemption. So what the court is noting is that perhaps FOIA has a quirky definition of trade secrets, but the documents at issue fall squarely within that exemption. It wasn't because of the protective order that they weren't disclosed. It was because of the trade secrets exemption. And as Your Honor also noted, trade secrets are fundamentally different from the kind of documents at issue in this case. These documents are at the very heart of what FOIA seeks to make public. They're about police officers who are, to many people, the face of the government and about how the city handles repeated complaints of abuse against its officers. Because these documents are a public record to which no exemption applies, they must be disclosed. We've already discussed waiver, but I'd like to also note that on the merits, Exemption 7-1-N does not exempt these lists from disclosure. As my co-counsel emphasized, 7-1-N is about adjudications of internal grievance in employee disciplinary matters. It's not about investigations of complaints of police misconduct. Defendants have taken pains to emphasize that they do not use the repeater list for any purpose, much less in these adjudications. They've also argued that because the documents are wholly derived from CRs, they should be exempt to the same extent as CRs. However, they don't contain any information that is itself exempt. As the defendants noted, they contain the name, the list of complaints, some dates, and the factual result, the final factual result of the investigation, and then the discipline that was actually imposed, if any discipline was imposed. Further belying the notion that these would be exempt based on the adjudicatory exemption is the fact that about 0.2% of these lead to any meaningful discipline, and there's only an adjudication in the rare cases where- Is that in the record? That is in the record, Your Honor, yes. Okay. So it's very rare that these investigations even lead to an adjudication at all. And they don't reveal anything about the adjudicative process. They don't reveal the charges that are filed with the police board, and it's actually the charging document that kicks off the adjudication, not the investigation. The superintendent files that charging document, as opposed to IPRA or the Internal Affairs Division who actually conduct the investigation. They don't reveal any motions or arguments. They don't reveal the substance or nature of the officer's challenge to punishment, and they don't reveal the substance or nature of any hearings before the police board. All of the information in the repeater list is otherwise public information. It might be used in adjudication, but as my co-counsel noted, relating to must be interpreted in context, and simply using public information in an adjudication does not make otherwise public information exempt. There's lots of public information that might be used in an adjudication. For example, a public record of the weather report might be relevant to a complaint. The crime statistics of the relevant neighborhood might potentially be relevant to a complaint, but just putting those materials into the mix of facts considered in an adjudication does not make them exempt. This is completely parallel to the fact that simply placing public information in a personnel file does not exempt it from disclosure. Can we get to the attorney fee issue? Sure. What's the standard of review? It is de novo because the court does not get discretion for misconstruing a statute. They didn't reach the issue on which they have deference. Tell me why you think the court misconstrued the statute. They interpreted substantially prevailed as having to do with the number of documents that Mr. Calvin received, or what percentage of his... How do you know that? Because it says that he obtained the repeater list and lost on his main request for the CRs. It doesn't say, although he substantially prevailed, we don't believe he's entitled to fees for X reason. But what did Judge Cohen say? Why did Judge Cohen deny you the fees for the documents that you want? The opinion says only that Mr. Calvin lost his main request for CRs. It's a relatively short section of the opinion, but it says that he lost on his main request for CRs. So why do you think that that was a statutory interpretation? That's my question. I mean, maybe the judge was wrong, but why do you think it was a statutory interpretation? I can understand the argument that he was wrong. That's why you're here. But why do you think it was a statute that he misinterpreted the statute? I'm sorry, I misunderstood your question, Your Honor. It's because he uses the language substantially prevailed. He says plaintiffs have not substantially prevailed because they lost on their main request for fees. What does this mean, then, substantially prevailed? Substantially prevailed has been interpreted by this court, for example, in the Duncan case, or it may have been the Illinois Supreme Court, to mean that substantially prevailed means change the legal relationship between the parties, that the litigation is necessary to receive the documents. So it's clear that if, for example, documents were not disclosed because of an administrative backlog, but then were disclosed after the litigation had filed because the litigation wasn't the reason that the documents were disclosed. Your argument is he was wrong because the ruling that was made in your favor changed the relationship, and so you substantially prevailed. Yes. That's basically what you're saying. Absolutely. Absolutely. And that he didn't reach, there's no record on the issue that he would have discretion on as to what amount of fees plaintiff would be owed or whether it was appropriate to use his discretion to award fees. That wasn't reached because he decided based on the substantially prevailed language, as you note incorrectly. Would it make any difference with your fee petition if you were here? How does that impact what happened? Say we rule in your favor. What does that? On both issues. On both issues. Yes. That's the other part of it. On both issues. We would be entitled to fees on any claims on which we prevail. So certainly if this ruling would change the outcome, we would be entitled to fees on whatever portions we prevail on. File a fee petition and the court rules on the reasonableness of it. Yes. Yes. That's correct. Yes. I was planning to do some rebuttal just to discuss the CRs quickly. Would you like me to do that or not? I thought he did the CRs. He did, but we thought that we would go and then the city would go and I would do rebuttal. Five minutes. It's not necessary. If you want to. Five minutes. Or less. Or less. So I guess I just want to note that the standard is clear and convincing evidence, at least in the 2010 version of FOIA. That's made explicit in terms of, and also they noted that Gekas and Walk-Ins did not interpret Provision 7-1U. That's because they had never raised it, which is actually further evidence that it never occurred to anybody that records concerning internal employee grievances would be, would cover complaints of police misconduct. It is a fundamental purpose of FOIA enshrined in Section 1 of the Criminal Code that the public has access to full and complete information about the operations of government. As Judge Lefkoe noted in reference to the very documents that are at issue here today, the public has a significant interest in monitoring the conduct of its police officers and a right to know how allegations of misconduct are being investigated and handled. Without such information, the public would be unable to supervise the individuals and institutions that it is entrusted with the With so much at stake, defendants simply cannot be permitted to operate in secrecy. Your Honors, we respectfully request you affirm the trial court's ruling that defendants must produce the repeater lists, reverse the trial court's ruling on CRs in order for defendants to produce the requested CR files, and reverse the trial court's denial of attorney's fees for all successful work performed in pursuit of Mr. Calvin's claims. Thank you, Counsel. Thank you. Do you feel any burning need to continue, Counsel? I promise. All right. Thank you. I want to discuss just two points about the record, and then I'll be done. The first is that as far as the 7-1-N being raised for the first time on reconsideration, the motion for reconsideration was actually, Your Honor, respectfully, we raised this in our summary judgment briefing. You missed it. Not, hey, this just dawned on us. Please consider this on reconsideration. Number two, as far as the statistics about the number of CRs that actually made it to adjudication, this concern, there was never evidence taken on this or some statistical study done on this case. The only citation I'm aware of in the briefing is in Mr. Calvin's brief, which he cites to a law review article by one of his own counsel. So I just want to make that clear as far as the evidence. Counsel, thank you for clearing that up. Well, thank you very much, ladies and gentlemen, for the argument that you make before this Court today. We will take it under advisement. Thank you. Thank you.